1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  JACQUELYN MCCARTEN,

9                                    Plaintiff,                    Case No. C14-225-JCC-BAT

10               v.                                         **REPORT AND**
                                                            **RECOMMENDATION**
11  CAROLYN W. COLVIN, Commissioner of
    Social Security,

12
                                   Defendant.
13

14        Jacquelyn McCarten appeals the denial of her Disability Insurance Benefits application,

15  seeking remand for an award of benefits.  She contends the ALJ erred by misevaluating the

16  medical evidence and erroneously rejecting the Global Assessment of Functioning ("GAF")

17  scores in the record.  Dkt. 15 at 1.  As discussed below, the Court recommends the case be

18  **REVERSED** and **REMANDED** for further administrative proceedings.

19                                  **BACKGROUND**

20        Following a hearing, the ALJ issued a final decision finding that since Ms. McCarten's

21  alleged onset date of October 7, 2010, she was not disabled.  Utilizing the five-step disability

22  evaluation process, the ALJ found that bipolar disorder and alcohol abuse in remission were

23  severe impairments that did not meet or equal the requirements of a listed impairment.  *See* 20

C.F.R. § 404.1520; 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ also found that Ms. McCarten

had the residual functional capacity ("RFC") to perform a full range of work at all exertional

levels but could only understand, remember, and carry out simple instructions; have occasional

interaction with coworkers and the public; and needed a routine and predictable work

environment.  Tr. 30.  Based on this RFC, the ALJ found Ms. McCarten could perform jobs

existing in the national economy and therefore was not disabled.  Tr. 35.

**DISCUSSION**

**A.      Medical Opinion Evidence**

In general, more weight should be given to the opinion of a treating physician than to a

non-treating physician, and more weight to the opinion of an examining physician than to a non-

examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where contradicted, a

treating or examining physician's opinion may not be rejected without "specific and legitimate

reasons supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quotation

and citation omitted).

**1.      Dr. Tawnya Christiansen, treating psychiatrist**

In March 2011, Dr. Christiansen opined Ms. McCarten had severe and marked limitations

in her cognitive and social abilities.  Tr. 480-81.  The ALJ gave Dr. Christiansen's opinion "little

weight" for several reasons.  Tr. 33.  Plaintiff argues these reasons are either legally insufficient

or lack the support of substantial evidence.

First, the ALJ found that "Dr. Christiansen stated that medications had proved

ineffective," but that this assessment was inconsistent with Ms. McCarten's "reports of

improvement with medication."  Tr. 33.  Substantial evidence does not support this finding.  The

ALJ misrepresents Dr. Christiansen's opinion, which stated:  "[T]hough [Ms. McCarten] has

REPORT AND RECOMMENDATION - 2

1    derived some benefit from current treatments, her progress continues to be limited, with frequent

2    resurgence of symptoms – thus, improvement is irregular, unpredictable."  Tr. 481.  This opinion

3    is not inconsistent with Ms. McCarten's report—prior to her alleged onset date—that "her mood

4    symptoms had been fairly well-controlled with lithium," Tr. 312, or with Dr. Christiansen's

5    treatment notes, which establish that Ms. McCarten continued to have difficulties despite some

6    improvement with medication, *see* Tr. 368-87.

7         Second, the ALJ found that Dr. Christiansen's opinion was inconsistent with her own

8    statement that Ms. McCarten had the ability to "attend to her personal needs, such as food,

9    clothing and hygiene" and "read and manage her own money."  Tr. 33 (citing Tr. 477-82 (Dr.

10   Christiansen's opinion)).  The ALJ fails to explain this finding, and the Court can discern no

11   inconsistency between Dr. Christiansen's opinion that Ms. McCarten would have limitations in

12   her ability to perform on a normal day-to-day work basis and her opinion that Ms. McCarten can

13   attend to basic personal needs.  As such, the ALJ's second reason for rejecting Dr. Christiansen's

14   opinion is not supported by substantial evidence.

15        Third, the ALJ found that the medical evidence did not support Dr. Christiansen's

16   findings.  Tr. 33.  Specifically, the ALJ found that Dr. Christiansen described Ms. McCarten as

17   late for appointments, but the medical evidence showed only one missed appointment and

18   several late arrivals.  *Id.*  As the ALJ noted, Dr. Christiansen found plaintiff had a "remarkable

19   difficulty remembering appointments."  Tr. 479.  However, Dr. Christiansen did not cite this

20   difficulty as the basis for any of the functional limitations she assessed.  *See* Tr. 480-81.

21   Accordingly, the Court does not find this inconsistency to be a specific and legitimate reason to

22   reject Dr. Christiansen's opinion.

23        The ALJ also found that the medical evidence did not support Dr. Christiansen's opinion

because "on February 16, 2011, Dr. Christiansen stated in her treatment notes that medication

provided 'fair stability' and that the claimant's hospitalization seemed more of [an] effort to

engage in a 'lower-stimulating environment' than truly fearing self-harm or suicide.  She did not

feel that the claimant met the admission criteria based on her reported symptoms." Tr. 33.  In

finding that medications provided Ms. McCarten "fair stability," ALJ selectively quotes from Dr.

Christiansen's treatment note, which stated that "lithium and lamotrigine seem to have provided

fair stability *though symptomatic relief was not optimal w/ them*. . . . She continues to struggle

with mood lability, irritability, feelings of despair at times . . . ." Tr. 372 (emphasis added).

Viewing Dr. Christiansen's chart note as a whole, the Court finds that is not inconsistent with her

opinion.  *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (an ALJ may not

selectively focus on aspects of the record that tend to suggest non-disability while disregarding

the remainder of the medical evidence).

 The ALJ's discussion of hospitalization also reflects a misinterpretation of the record.

Dr. Christiansen's February 16, 2011 treatment notes indicates that Ms. McCarten was

*considering* checking herself into a hospital, not that Ms. McCarten had been hospitalized.  *See*

Tr. 372.  Furthermore, the fact that Dr. Christiansen did not believe Ms. McCarten met the

criteria for hospitalization at that time does not undermine her opinion as to Ms. McCarten's

functional limitations.  As such, substantial evidence does not support the ALJ's finding that Dr.

Christiansen's opinion is inconsistent with the medical evidence.

 Fourth, the ALJ discounted Dr. Christiansen's opinion because she had only been treating

Ms. McCarten for about six months.  Tr. 33.  In fact, Ms. McCarten saw Dr. Christiansen five

times between September 2010 and March 2011 when the doctor rendered her opinion.  Tr. 368,

370, 374, 379, 383, 387.  Although an ALJ may consider the length of a treating relationship and

1    frequency of visits when evaluating a medical opinion, *see* 20 C.F.R. § 404.1527(d), the Court

2    finds that five visits over the course of approximately seven months establishes Dr.

3    Christiansen's status as a treating physician and is not a specific and legitimate reason to reject

4    her opinion.

5           Finally, the ALJ found that "the longitudinal record overall does not support the degree

6    of restrictions listed in either cognitive or social factors."  Tr. 33.  In general, a broad statement

7    that a medical opinion is inconsistent with the overall longitudinal record is impermissibly

8    vague.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Regennitter v. Soc. Sec.*

9    *Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("Conclusory reasons will not justify an ALJ's

10   rejection of medical opinion.").  Nevertheless, even if the ALJ explains her decision with "less

11   than ideal clarity," the Court must uphold it if the ALJ's "path may reasonably be discerned."

12   *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation and citation omitted).  In this

13   case, the record supports the ALJ's rejection of Dr. Christiansen's opinion of cognitive

14   limitations.  While Dr. Christiansen opined Ms. McCarten had severe limitations in her ability to

15   understand, remember, and persist in tasks following simple instructions, Tr. 480, mental status

16   examinations ("MSE") performed by other examining doctors routinely established that Ms.

17   McCarten's memory and concentration were within normal limits, *see* Tr. 32-33 (ALJ's decision

18   discussing the opinion evidence), 269-72 (2/24/10 MSE showing unimpaired attention,

19   concentration, and memory; opinion of Dr. McDuffee that Ms. McCarten had no limitations in

20   her ability to understand, remember, and follow simple instructions), 501-08 (11/21/11 MSE

21   showing no cognitive impairments; opinion of Dr. Sakuma that plaintiff had no limitations in her

22   ability to understand, remember, and carry out simple instructions), 571-72 (1/25/12 MSE

23   finding some limitation in memory but generally normal concentration).  Thus the Court can

REPORT AND RECOMMENDATION - 5

1   reasonably discern the ALJ's path to rejecting Dr. Christiansen's opinion of cognitive

2   limitations. *See Molina*, 674 F.3d at 1121.  The same is not true, however, for the ALJ's

3   unexplained finding that the longitudinal record does not support Dr. Christiansen's opinion of

4   severe and marked social limitations.  After reviewing the ALJ's decision, the Court cannot

5   determine the basis for the ALJ's finding that the longitudinal record was contradictory.  As

6   such, substantial evidence does not support this finding.

7          The ALJ's erroneous rejection of Dr. Christiansen's opinion of Ms. McCarten's social

8   limitations was harmful because all of those limitations were not accounted for in the

9   hypothetical presented to the vocational expert ("VE").  *See Matthews v. Shalala*, 10 F.3d 678,

10  681 (9th Cir. 1993) (a VE's testimony based on an incomplete hypothetical lacks evidentiary

11  value to support a finding that a claimant can perform jobs in the national economy); *Molina*,

12  674 F.3d at 1115 (error is harmless where it is "inconsequential to the ultimate nondisability

13  determination") (citation omitted).  As discussed below, remand for further proceedings is the

14  appropriate remedy for the ALJ's error.  On remand, the ALJ shall reevaluate Dr. Christiansen's

15  opinion of Ms. McCarten's limitations in her ability to communicate and perform effectively in a

16  work setting with public contact and limited public contact, and maintain appropriate behavior in

17  a work setting. *See* Tr. 481.

18         **2.      Dr. Victoria McDuffee, examining psychologist**

19         Dr. McDuffee examined Ms. McCarten in February 2010, approximately eight months

20  before the alleged onset date.  Tr. 264-73.  Dr. McDuffee opined Ms. McCarten had marked

21  limitations in her ability to exercise judgment and make decisions, and moderate limitations in

22  her social abilities.  Tr. 269.  She assessed a GAF score of 40.  Tr. 268.

23         The ALJ gave Dr. McDuffee's opinion "some weight."  Tr. 32.  The ALJ rejected Dr.

1   McDuffee's opinion of marked limitations in Ms. McCarten's ability to exercise judgment and

2   make decisions because this opinion was based on Ms. McCarten's self-reports. *Id.* The ALJ

3   accepted the moderate limitations because they were consistent with the examination and the

4   record as a whole. *Id.* The ALJ also noted that Dr. McDuffee's evaluation occurred before the

5   alleged onset date. *Id.*

6          In challenging the ALJ's treatment of Dr. McDuffee's opinion, Ms. McCarten presents

7   somewhat contradictory arguments. On the one hand, she suggests the ALJ erred by assigning

8   any weight to the opinion because it was rendered prior to her July 2010 psychiatric

9   hospitalization, and the record establishes a worsening of her symptoms after the opinion. On

10   the other hand, she argues the ALJ erred by rejecting the marked limitation in her ability to

11   exercise judgment and make decisions. Ms. McCarten also argues the ALJ failed to address the

12   GAF score of 40.

13          Ms. McCarten's first argument is not persuasive because she fails to establish the ALJ's

14   reading of the record was unreasonable. Specifically, Dr. Sakuma's later opinion is generally

15   consistent with Dr. McDuffee's opinion. *See* Tr. 501-08. The ALJ is responsible for resolving

16   conflicts in the medical record, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164

17   (9th Cir. 2008), and when evidence reasonably supports either confirming or reversing the ALJ's

18   decision, the Court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d

19   1094, 1098 (9th Cir. 1999).

20          The Court agrees, however, that the ALJ failed to properly reject Dr. McDuffee's opinion

21   of marked limitations in judgment and decision making. Substantial evidence does not support

22   the ALJ's finding that Dr. McDuffee based this opinion on plaintiff's self-reports. Rather, she

23   based her opinion on Ms. McCarten's MSE. *See* Tr. 269 ("She appears to have impaired

practical judgment – see addendum.  Thought processes are concrete which can impair her ability to think through her decisions from all sides.").  Although Ms. McCarten scored well on most aspects of the MSE, Dr. McDuffee found that her insight and judgment were "poor," her thinking processes were "moderately impaired," and her practical judgment was "markedly impaired."  Tr. 272.  As such, the MSE provides objective support for Dr. McDuffee's opinion regarding Ms. McCarten's limitations in judgment and decision making.

Ms. McCarten is also correct that the ALJ erred by failing to address the GAF of 40.  Although the ALJ discussed other GAF scores in the record, she failed to cite to Dr. McDuffee's assessment.  *See* Tr. 31.  A GAF score assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. § 404.1527(a)(2), and an ALJ must assess a claimant's RFC based on all of the relevant evidence in the record, including medical source opinions.  20 C.F.R. § 404.1545(a).  As such, the regulations indicate that GAF scores are relevant evidence that should be considered and can only be rejected for specific reasons.

On remand, the ALJ shall reevaluate Dr. McDuffee's opinion, including the GAF of 40.

### 3.    Dr. James Czysz, examining psychologist

In January 2012, Dr. Czysz examined Ms. McCarten and opined that her mental health symptoms "would have a substantially negative impact on Ms. McCarten's ability to maintain sustained concentration and pace in the workplace through the course of a typical work day."  Tr. 570.  He also stated that she "tends to exercise very poor judgment and engage in much risk taking behavior during her manic phases which appear to be somewhat treatment refractory."  *Id.*  Although Ms. McCarten performed "reasonably well" on the MSE, Dr. Czysz found that "she chronicled a history of credible bipolar symptoms and when she is depressed, or, more likely when she is manic, she engages in remarkably poor decision making and she exercises poor

1   judgment that has led to very negative consequences." Tr. 572. Dr. Czysz assessed a GAF score

2   of 39 and opined, "Currently, she would not be employable in a competitive market and further

3   job losses would be more demoralizing for her and likely further erode her self-esteem." Tr.

4   570.

5          The ALJ gave "little weight" to Dr. Czysz's opinion because he did not "provide

6   sufficient explanations or details to support [the] broad statement" that she was unemployable,

7   and he most likely relied on her self-reporting of her history and symptoms, given that the MSE

8   was unremarkable.[1] Tr. 34. An ALJ may reject an opinion that is "brief, conclusory, and

9   inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

10   2002). An ALJ may also reject an opinion "if it is based 'to a large extent' on a claimant's self-

11   reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035,

12   1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.

13   1999)). The ALJ found Ms. McCarten less than fully credible, and she does not challenge that

14   finding here. Nevertheless, she contends the ALJ erroneously rejected Dr. Czysz's opinion

15   because the doctor referred to symptoms that would impair her ability to sustain concentration

16   and pace in a competitive work environment. *See* Tr. 569. She also argues the ALJ improperly

17   referred to the MSE findings because the MSE tests primarily cognitive abilities, while Dr.

18   Czysz believed that the symptoms of Ms. McCarten's bipolar disorder would impact her

19   functioning in a work setting. *See id.*

20          Ms. McCarten fails to establish the ALJ's reading of the record was unreasonable. *See*

21   *Tackett*, 180 F.3d at 1098 (when the evidence reasonably supports either confirming or reversing

22

23          [1] The ALJ also rejected Dr. Czysz's GAF score. The Court will address this issue below
     when discussing Ms. McCarten's argument that the ALJ's improperly rejected all of the GAF
     scores in the record.

REPORT AND RECOMMENDATION - 9

1    the ALJ's decision, the court may not substitute its judgment for that of the ALJ).  As Ms.

2    McCarten acknowledges, the MSE does not support Dr. Czysz's opinion.  *See* Tr. 571-72.  And

3    although she points to her symptoms as supporting the opinion, it is apparent that many of those

4    symptoms were based on her self-reports.  For example, Dr. Czysz noted that Ms. McCarten has

5    "[r]emarkably poor judgment and decision making when manic," "[m]any impulsive,

6    destructive, and dangerous behaviors when manic," and "[p]oor reality testing when manic; she

7    will develop elaborate delusional systems."  Tr. 569.  But the MSE results do not indicate that

8    Ms. McCarten was manic during the examination.  *See* Tr. 571.  Accordingly, substantial

9    evidence supports the ALJ's rejection of Dr. Czysz's opinion as based on Ms. McCarten's self-

10   reports.

11          **4.      Dr. Michael Sakuma, examining psychologist**

12          Dr. Sakuma examined Ms. McCarten in November 2011 and opined she had moderate

13   limitations in her ability to make judgments on simple and complex work-related decisions,

14   interact appropriately with co-workers, and respond appropriately to usual work situations and

15   changes in a routine work setting.  Tr. 501-02.  The ALJ gave this opinion significant weight

16   because it was consistent with the testing, the medical evidence, and the non-examining doctors'

17   opinions.  Tr. 33.

18          Ms. McCarten argues the ALJ did not address the contrast between Dr. Sakuma's opinion

19   and Dr. Christiansen's concurrent treatment notes showing increasing depression, anhedonia,

20   isolation, anxiety, cutting behaviors, and transient suicidal ideation.  *See* Tr. 513, 518, 523.  She

21   also argues the ALJ failed to consider the deterioration leading up to her subsequent

22   hospitalization.  She contends the ALJ's decision to afford this opinion the greatest weight was

23   not based on a rational reading of the record.  But as the ALJ found, Dr. Sakuma's opinion is

supported by substantial evidence, namely his examination and MSE.  *See* Tr. 33, 501-02, 506-07; *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007) ("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (citation omitted).  As noted above, the ALJ is responsible for resolving conflicts in the medical record, and Ms. McCarten does not establish that the ALJ's interpretation of the record was unreasonable.  Accordingly, the ALJ did not commit harmful err in relying on Dr. Sakuma's opinion.

### 5.      Non-examining source opinions

The ALJ gave significant weight to the opinions of the non-examining doctors and incorporated consistent limitations into the RFC.  *See* Tr. 35, 76-77, 88-89.  Ms. McCarten argues the ALJ erred in doing so.  However, she cannot establish harmful error because the ALJ's RFC finding is also supported by Dr. Sakuma's opinion.  Therefore, even if the ALJ err, that error would not affect the ultimate nondisability determination.  *See Molina*, 674 F.3d at 1115.

## B.      GAF Scores

The record includes numerous GAF scores assessed from before the amended alleged onset date in October 2010 up until shortly before the hearing in March 2012.  Most of the GAF scores after October 2010 ranged from 42-50, with the exception of Dr. Czysz's GAF score of 39.  *See* Tr. 383-87, 404-07 (9/2010-10/2010 – two GAF scores of 55 and two GAF scores of 42), 364-79 (12/2010-3/2011 – four GAF scores of 50), 513-62 (4/2011-12/2011 – nine GAF scores of 48), 570 (2/2012 – Dr. Czysz's GAF score of 39).  GAF scores provide a measure for an individual's overall level of psychological, social, and occupational functioning.  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000)

1 (DSM-IV-TR).[2]  The scores "may be particularly useful in tracking the clinical progress of

2 individuals in global terms, using a single measure."  *Id.* at 30.  A GAF range of 41-50 reflects

3 "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or

4 any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to

5 keep a job)."  *Id.* at 32.

6          The ALJ gave little weight to the GAF scores of 50 or less that various medical sources

7 assessed.  Tr. 31-32.  The ALJ found that GAF scores are not necessarily indicative of

8 functioning for a 12-month period; may incorporate a claimant's subjective complaints, meaning

9 that a lack of credibility undermines the accuracy of the scores; and incorporate external factors

10 not relevant to a disability determination, such as homelessness, unemployment, and financial

11 hardships.  Tr. 31.  The ALJ also found that the GAF scores were inconsistent with Ms.

12 McCarten's ability to complete her activities of daily living with few limitations.  Tr. 32.

13          As a general matter, a GAF score is not dispositive of mental disability for social security

14 purposes.  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing Revised

15 Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746,

16 50764-50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity

17 requirements in our mental disorders listings.")); *see also Gutierrez v. Astrue*, No. 12-cv-1390

18 MEJ, 2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) ("A GAF score of 50 does not

19 necessarily establish an impairment seriously interfering with the claimant's ability to perform

20 basic work activities.").  Thus, as explained above, the regulations indicate that GAF scores are

21 relevant evidence that should be considered and can only be rejected for specific reasons.

22          The ALJ's generic reasons why GAF scores should be given little weight were not valid

23 [2] The most recent version of the DSM does not include a GAF rating for assessment of mental
disorders.  DSM-V at 16-17 (5th ed. 2013).

1    reasons to reject the opinions out of hand.  *See, e.g.*, *Vanbibber v. Colvin*, No. C13-546-RAJ,

2    2014 WL 29665, at *2 (W.D. Wash. Jan. 3, 2014).  The ALJ, however, provided one reason

3    specific to Ms. McCarten:  that the opinions were inconsistent with her ability to perform

4    activities of daily living.  *See* Tr. 32.  Ms. McCarten's daily activities included teaching herself

5    computer skills, working on art projects, reading, visiting the library and using their internet

6    service, handling issues with other residents at the transitional housing unit where she lived, and

7    seeing friends regularly.  Tr. 31.

8         Ms. McCarten asserts this reason is legally insufficient because most of the scores were

9    assessed by treating sources who were aware of her daily functioning and did not believe her

10   functioning was inconsistent with the GAF scores they assessed.  But an ALJ may reject a

11   medical opinion that is inconsistent with a claimant's level of activity, *Rollins v. Massanari*, 261

12   F.3d 853, 856 (9th Cir. 2001), and substantial evidence supports the ALJ's finding here.

13   Specifically, GAF scores of 41-50 may reflect serious social impairment (e.g., no friends), as

14   noted above, but the ALJ found that Ms. McCarten had friends.  Although a GAF score may also

15   reflect serious symptoms or serious impairment in occupational or school functioning, the

16   doctors who assessed GAF scores did not explain what the scores reflected.  Accordingly, the

17   Court cannot say the ALJ was unreasonable in finding that the GAF scores were inconsistent

18   with Ms. McCarten's activities of daily living.  *See Morgan*, 169 F.3d at 599 ("Where the

19   evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

20   must be upheld.") (citation omitted).  Ms. McCarten fails to establish harmful error in the ALJ's

21   consideration of the GAF scores in the record.

22   **C.      Remand for Further Proceedings**

23        Ms. McCarten argues the Court should credit the erroneously rejected opinion evidence

REPORT AND RECOMMENDATION - 13

1   as true and remand for an award of benefits.  The Court has discretion to remand for further

2   proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

3   Three elements must be satisfied for a court to remand for an award of benefits:

4       (1) the record has been fully developed and further administrative proceedings
       would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

5       reasons for rejecting evidence, whether claimant testimony or medical opinion;
       and (3) if the improperly discredited evidence were credited as true, the ALJ

6       would be required to find the claimant disabled on remand.

7   *Garrison v. Colvin*, --- F.3d ----, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014).  The third

8   requirement "incorporates what we have sometimes described as a distinct requirement of the

9   credit-as-true rule, namely that there are no outstanding issues that must be resolved before a

10  determination of disability can be made."  *Id.* at *20 n.26.  If all three requirements are satisfied,

11  the Court must remand for an award of benefits unless "the record as a whole creates serious

12  doubt that the claimant is, in fact, disabled . . . ."  *Id.* at *21.

13      Here, remand for further proceedings is the appropriate remedy because it is not at all

14  clear that if the improperly rejected opinions were credited as true, Ms. McCarten would be

15  disabled within the meaning of the Social Security Act.  This is true because the VE did not

16  testify regarding the impact of the improperly rejected functional limitations on Ms. McCarten's

17  ability to work.  *See* Tr. 66-67.  Accordingly, the Court remands for further proceedings pursuant

18  to sentence four of 42 U.S.C. § 405(g).

19  **CONCLUSION**

20      For the foregoing reasons, the Court recommends that the Commissioner's decision be

21  **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand,

22  the ALJ should reevaluate Dr. Christiansen's opinion of social limitations and Dr. McDuffee's

23  opinion.  As necessary, the ALJ should further develop the record, revise Ms. McCarten's RFC,

and proceed with steps four and five of the sequential evaluation process.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **August 25, 2014**.  If no objections are filed, the matter will be ready for the Court's consideration on **August 29, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 11th day of August, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15